UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NOEL NIGHTINGALE,<br><br>Plaintiff,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, d/b/a Seattle Public Schools,<br><br>Defendant. | No.<br><br>COMPLAINT |

Plaintiff Noel Nightingale ("Ms. Nightingale"), by and through her undersigned counsel, files this complaint against Defendant Seattle School District No. 1, doing business as Seattle Public Schools ("SPS"), for denying her equal access to SPS's programs and activities in violation of federal law. She alleges as follows:

I. **INTRODUCTION**

1. Plaintiff Noel Nightingale is mother to three children enrolled in SPS institutions. She is blind. She brings this action because SPS has denied her an opportunity equal to that afforded sighted parents to informational materials and educational technology and, as a result, has denied her the opportunity to participate in her children's education. That denial has stemmed from SPS's selection of software programs and its creation and maintenance of a website that excludes Ms. Nightingale from integrated access.

COMPLAINT - 1

## II.   JURISDICTION AND VENUE

2. This is an action for declaratory and injunctive relief, and damages, brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because Defendant does business in this district, the acts constituting violations of the ADA and Section 504 occurred in this district, and Ms. Nightingale resides in this district.

## III.   THE PARTIES

4. Plaintiff Noel Nightingale is mother to three children: L.P. is fourteen and in the ninth grade, C.P. is eleven and in the sixth grade, and D.P. is nine and in the fourth grade. All three children attend schools within the SPS system. Her children have attended schools within the SPS system since 2005. For the 2014-2015 school year, D.P. will attend John Muir Elementary School, C.P. will attend Washington Middle School, and L.P. will attend Garfield High School. However, during the time period referred to in this complaint, D.P. and C.P. attended John Muir Elementary School, and L.P. attended Washington Middle School.

5. Ms. Nightingale is blind. Her primary method of accessing digital information is to use software that expresses digital text as synthesized speech. To do so, she uses a common screen access software known as Job Access with Speech ("JAWS"). This software also enables Ms. Nightingale to use keyboard commands to easily navigate text, to change the speed of speech to enhance her comprehension, and to receive audible cues concerning paragraphing, punctuation, and other organizational information. In short, JAWS allows Ms. Nightingale to access textual digital content with the same independence and cognitive features available to sighted individuals through visual reading.

6. Defendant SPS is the local educational agency and therefore is a public entity under Title II of the ADA, 42 U.S.C. § 12131, *et. seq.*

COMPLAINT - 2

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604   Fax 206.343.3961

10824.01 hh200904

7. SPS is the largest K-12 school system in Washington state, serving more than 49,870 students in 95 schools.

8. As a public school district, SPS receives federal financial assistance, which accounts for ten percent of its resources and funds programs such as Title I and Head Start. Consequently, SPS is required to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## IV.   STATEMENT OF FACTS

### Use of the Internet and Technology by the Blind

9. For sighted and blind persons, the Internet is a significant source of information and education, a place for everyday activities such as shopping and research, and a means for keeping informed. The Internet offers a wealth of information, services, and products with instant availability and without the need to travel to obtain this information.

10. In the educational context, schools and school districts use the Internet to keep parents and the public informed of their activities and happenings, as well as to provide general information about their curriculum, programs, and activities. Many school districts maintain a website for these purposes.

11. School districts also often use various computer software programs within the classroom as part of their curriculum. The students use these programs to learn lessons and master concepts in subjects such as math and reading.

12. The blind access the Internet and computer software programs from personal computers by using keyboards in conjunction with screen access software, or screen readers, which vocalizes visual information on a computer screen or displays the content on a refreshable Braille display. Such screen readers provide the only method by which all blind persons can independently access computerized digital information. Unless Internet applications and software programs are designed to allow for use with screen readers, blind persons are unable to meaningfully access all the information, programs, and services they offer.

COMPLAINT - 3

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

13.     Several screen readers are available to blind users of Windows and Apple operating system-enabled computers. The most popular screen reader is Job Access With Speech, or JAWS. For Apple users, the predominant screen reader is VoiceOver. While each screen reader may have differences in how the user operates the software, each requires that the information available to sighted persons be capable of being rendered into text.

14.     When digital textual content is properly formatted, it is universally available to the sighted and blind alike and does not require the re-creation of text in a separate format. Unlike printed content, digital content is not inherently visual (or audible or tactile), and so must be converted to be accessible to any or all of those senses. Thus, for example, this Complaint is in a PDF format that without modification can be read both by those with sight using their eyes and by blind persons using screen readers.

15.     Recognized standards exist for the preparation and presentation of universally designed mainstream digital content. For example, the World Wide Web Consortium has promulgated Web Content Accessibility Guidelines 2.0, Success Criteria AA (hereinafter, "WCAG 2.0 AA"). Accessible math content is best presented in MathML. Free open-source software has been written to make it easy to convert equations from the language in which they are typically written (LaTex) into MathML. When source files are not available, equations can be pasted into Microsoft Word and then, with the aid of an inexpensive (approximately $30) plug-in, can be exported from Word into MathML.

**SPS Website**

16.     SPS maintains its website at www.seattleschools.org (the Website). The Website provides a wide range of information on topics important to students and their parents such as news and announcements, events, budget, transportation, school meals, school reports and district scorecards, and more.

17.     The Website makes it possible for parents to efficiently and conveniently obtain information about the happenings of SPS and perform tasks relating to their children's education. For example, the Website provides access to forms to enroll a child in school, change a child's

COMPLAINT - 4

address, or apply for a school choice. As such, the Website provides unique benefits and services.

18. Because the Website is not designed and programmed to be accessed nonvisually using screen readers, blind parents attempting to use the Website, including Ms. Nightingale, are unable to independently navigate and access all of the same information, enjoy all of the same benefits and services, and engage in all of the functions available to sighted parents. Vision is required to successfully use the SPS Website.

19. The Website contains barriers that prevent full and equal use by blind persons, including Ms. Nightingale, who use keyboards together with screen access software. These barriers are pervasive and include: the lack of alt-tags or text on graphics, unlabeled or mislabeled buttons, unlabeled or mislabeled headings, unlabeled or mislabeled fields, unlabeled or mislabeled text boxes and areas, unlabeled or mislabeled lists, links that cannot be activated, and other information, controls, and elements that are not detectable by screen access software. These barriers violate WCAG 2.0 AA.

20. For example, the links across the top of the Website for "Schools", "Students", "Family and Communities", and "District" can only be activated by clicking the link where it visually appears with a mouse, an option not available to a blind computer user, rather than also being susceptible to being activated with a keyboard command. As these lists appear to be the primary way to access the majority of content on the Website, these are especially egregious accessibility barriers.

21. From 2005 to 2012, Ms. Nightingale accessed the Website without significant difficulty.

22. Beginning in July 2012, however, Ms. Nightingale was unable to access the information she sought because the Website presented new significant access barriers.

23. In July 2012, Ms. Nightingale emailed the Webmaster and explained that she was no longer able to access the Website with her screen reader. In November 2012, the Webmaster

COMPLAINT - 5

informed her that SPS could not remedy the accessibility issues on its own, but was working with the vendor to correct the situation and achieve ADA compliance.

24.     SPS did not correct the situation, so Ms. Nightingale contacted SPS again, repeatedly requesting that it remedy the deficiencies in the Website. But despite Ms. Nightingale's persistent and regular inquiry and requests regarding the state of the Website, SPS's Website remains inaccessible. A report of user and automated testing of barriers on the Website, begun July 31, 2014, describes barriers that prevent Ms. Nightingale from accessing, with substantially equivalent ease of use, all of the same information and engaging in all of the same transactions on the Website as are available to sighted users and is attached hereto as Exhibit A and incorporated into the Complaint as if alleged herein.

25.     Common technology and methods exist for SPS to make the Website accessible to the blind. Various school districts, both larger and smaller than SPS, have used such technology and methods to make their websites accessible to the blind.

26.     The Website thus contains barriers that deny full and equal access to Ms. Nightingale, who would otherwise use the Website to be a fully engaged and active parent.

**ST Math**

27.     In the 2013-2014 school year, SPS required that Ms. Nightingale's son, C.P., and his classmates use a software program, ST Math, to complete math assignments. The students used ST Math both in class and at home.

28.     Midway through the school year, C.P.'s teacher contacted Ms. Nightingale and told her that C.P. had fallen behind on his assignments in ST Math. The teacher informed Ms. Nightingale that ST Math featured a graph showing how much work the student had completed, and that the graph showed that C.P. had completed less than half of the work expected of him and done by most of his classmates.

29.     Ms. Nightingale attempted to log into ST Math, but was unable to do so because ST Math was not designed to be compatible with screen reading software and is completely

COMPLAINT - 6

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

1  inaccessible to the blind, including Ms. Nightingale.  Even when C.P. logged into the software,
2  Ms. Nightingale was unable to view his assignments or the graph tracking his progress.

3      30.    ST Math contains barriers that prevent full and equal use by Ms. Nightingale and
4  other blind persons who use keyboards and screen readers.  These barriers are pervasive and
5  include: the lack of keyboard access, inaccessible text content, lack of alt-tags or text on
6  graphics, unlabeled buttons, and other information, controls, and elements that are not detectable
7  by screen access software.

8      31.    It was and is entirely feasible, and affordable, for school districts to license
9  educational software that conveys math digitally in an accessible format such as MathML, thus
10 making math available to sighted and blind parents and students alike.

11     32.    Consequently, Ms. Nightingale was completely unable to monitor C.P.'s progress
12 or assist him with his homework and has suffered damages as a result.

## COUNT I

### Violations of Title II of the Americans with Disabilities Act

### 42 U.S.C. § 12131 *et seq.*

16     33.    Plaintiff Ms. Nightingale incorporates the allegations the preceding paragraphs, as
17 if alleged herein.

18     34.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,
19 guarantees equal access for qualified individuals to the benefits of the services, programs, or
20 activities of a public entity.  42 U.S.C. § 12132 *et seq.*

21     35.    Title II of the ADA mandates, *inter alia*, that "no qualified individual with a
22 disability shall, by reason of such disability, be excluded from participation in or be denied the
23 benefits of the services, programs, or activities of a public entity, or be subjected to
24 discrimination by any such entity." 42 U.S.C. § 12132.

25     36.    Furthermore, a "public entity shall take appropriate steps to ensure that
26 communications with applicants, participants, members of the public, and companions with
27 disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).  A

COMPLAINT - 7

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

"'companion' means a family member, friend, or associate of an individual seeking access to a service, program, or activity of a public entity, who, along with such individual, is an appropriate person with whom the public entity should communicate." *Id* § 35.160(a)(2).

37. Such public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160(b)(1).

38. SPS is the local educational agency and thus is a public entity under Title II of the ADA.

39. The SPS Website and curriculum are services, programs or activities provided by SPS.

40. Ms. Nightingale is an individual and companion with a disability: as a family member of her three children enrolled in SPS schools, she is an appropriate person with whom SPS should communicate. Such communication with Ms. Nightingale is necessary to serve the interests of her children, who are participating in SPS's services, programs, and activities.

41. SPS has failed and is failing to meet its obligations to communicate effectively with Ms. Nightingale and consequently is denying her the opportunity to participate in her children's education—an opportunity provided to parents without disabilities. Because this denial prevents her children from fully participating in SPS's services, programs, or activities, SPS must assure effective communication with Ms. Nightingale and other disabled parents.

42. SPS's actions constitute discrimination on the basis of a disability in violation of the ADA, in that SPS: (1) has failed to maintain policies and procedures to ensure compliance with Title II, specifically policies that provide equal access and effective communication to individuals and companions with disabilities; (2) has failed to ensure that communications with Ms. Nightingale were as effective as communications with non-disabled companions, including other parents; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide reasonable modifications of

COMPLAINT - 8

1  policies, practices, and procedures; (5) has purchased and deployed new equipment and software that is inaccessible to Ms. Nightingale after the effective date of the ADA; and (6) has failed to provide educational information in a manner that is timely, equally effective and equally integrated.

43. As a result of SPS's actions, Ms. Nightingale has suffered and continues to suffer irreparable harm: she has suffered and continues to suffer from discrimination and unequal access to SPS's programs and activities, as well as the inability to obtain information about and assist her children, who are participating in SPS's services, programs and activities.

44. She has been and continues to be denied full access to the information intended to be communicated to parents of children enrolled in SPS schools.

45. The actions by SPS were also done intentionally or with deliberate indifference to the protected rights of Ms. Nightingale, thus entitling her to damages.

## COUNT II

### Violations of § 504 of the Rehabilitation Act of 1973

### 29 U.S.C. § 794 *et seq.*

46. Plaintiff Ms. Nightingale incorporates by reference all allegations contained in the preceding paragraphs, as if alleged herein.

47. Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

48. Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ." *Id.* § 794(b)(1).

COMPLAINT - 9

49. Such federally funded programs and activities must provide aids and services that "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 34 C.F.R. § 104.4(b)(2).

50. SPS receives federal financial assistance, thereby subjecting itself to the requirements of Section 504.

51. Ms. Nightingale is blind and is a parent of students at SPS institutions. She is therefore a qualified individual with a disability under Section 504.

52. SPS has, solely by reason of her disability, excluded Ms. Nightingale from participation in, denied her the benefits of, and otherwise discriminated against her in its facilities, services, programs or activities. SPS's violation of Section 504 and its regulations has denied and continues to deny Ms. Nightingale an equal opportunity to access the educational information SPS offers to non-disabled parents.

53. SPS's actions constitute discrimination on the basis of a disability in violation of the Section, in that SPS: (1) has failed to maintain policies and procedures to ensure compliance with Section 504, specifically policies that provide equal access and effective communication to individuals with disabilities; (2) has failed to ensure that communications with Ms. Nightingale were as effective as communications with non-disabled parents; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide reasonable modifications of policies, practices, and procedures; (5) has purchased and deployed new equipment and software that is inaccessible to Ms. Nightingale after the effective date of Section 504; (6) has failed to provide educational information in a manner that is timely, equally effective and equally integrated; and (7) has otherwise discriminated against Ms. Nightingale.

54. As a result of SPS's actions, Ms. Nightingale has suffered irreparable harm: she has suffered and continues to suffer from discrimination and unequal access to SPS's programs

COMPLAINT - 10

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604   Fax 206.343.3961

10824.01 hh200904

and activities, as well as the inability to obtain information about and assist her children, who are participating in SPS's services, programs and activities.

55. The actions by SPS were also done intentionally or with deliberate indifference to the protected rights of Ms. Nightingale, and thus entitle her to damages.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiff Ms. Nightingale requests judgment against the Defendant as follows:

(a) A preliminary and permanent injunction prohibiting Defendant from violating Title II of the ADA, the Rehabilitation Act;

(b) A declaration that Defendants have and continue to violate Title II of the ADA and the Rehabilitation Act;

(c) An award to Plaintiff of compensatory damages;

(d) An award to Plaintiff of her reasonable attorneys' fees and costs; and

(e) The right to conform the pleadings to the evidence presented at trial; and

(f) An award of such other and further relief as the Court may deem just.

DATED this 20th day of August, 2014.

MacDONALD HOAGUE & BAYLESS

By: /s/Jesse Wing
Jesse Wing, WSBA # 27751
JesseW@MHB.com
1500 Hoge Building
705 Second Avenue
Seattle, WA  98104
Phone:  (206) 622-1604

Attorneys for Plaintiff

COMPLAINT - 11

1  DATED this 20th day of August, 2014.

2                                        MacDONALD HOAGUE & BAYLESS

3

4                                        By: */s/Joe Shaeffer*
                                             Joe Shaeffer, WSBA # 33273
5                                            JosephS@MHB.com
                                             1500 Hoge Building
6                                            705 Second Avenue
                                             Seattle, WA  98104
7                                            Phone:  (206) 622-1604

8
                                             Attorneys for Plaintiff
9

10 DATED this 20th day of August, 2014.

11                                       BROWN, GOLDSTEIN & LEVY LLP

12

13
                                         By: */s/Daniel F. Goldstein*
14                                           Daniel F. Goldstein *(pro hac vice* pending*)*
                                             dfg@browngold.com
15                                           120 E. Baltimore Street Suite 1700
                                             Baltimore, Maryland 21202
16                                           Phone: (410) 962-1030

17                                           Attorneys for Plaintiff

18
   DATED this 20th day of August, 2014.
19
                                         BROWN, GOLDSTEIN & LEVY LLP
20

21
                                         By: */s/Emily L. Levenson*
22                                           Emily L. Levenson *(pro hac vice* pending*)*
                                             elevenson@browngold.com
23                                           120 E. Baltimore Street Suite 1700
                                             Baltimore, Maryland 21202
24                                           Phone: (410) 962-1030

25                                           Attorneys for Plaintiff

26

27

COMPLAINT - 12

10824.01 hh200904