1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NOEL NIGHTINGALE, | No. C14-1286 RAJ |
| and | AMENDED COMPLAINT |
| The National Federation of the Blind, Inc., | |
| Plaintiffs, | |
| v. | |
| SEATTLE SCHOOL DISTRICT NO. 1, d/b/a Seattle Public Schools, | |
| Defendant. | |

Plaintiffs Noel Nightingale ("Ms. Nightingale") and the National Federation of the Blind

("NFB"), by and through undersigned counsel, file this amended complaint against Defendant

Seattle School District No. 1, doing business as Seattle Public Schools ("SPS"), for denying

them equal access to SPS's programs and activities in violation of federal law.  They allege as

follows:

## I.   **INTRODUCTION**

1.      Plaintiff Noel Nightingale is mother to three children enrolled in SPS institutions.

She is blind and a member of the NFB.  She brings this action because SPS has denied her an

opportunity equal to that afforded sighted parents to informational materials and educational

technology and, as a result, has denied her the opportunity to participate in her children's

AMENDED COMPLAINT - 1

10824.01 hh200904

education.  That denial has stemmed from SPS's selection of software programs and its creation and maintenance of a website that exclude Ms. Nightingale from integrated access.

2.     The NFB brings this action on behalf of its members, both blind students and parents, who SPS has denied an opportunity equal to that afforded sighted persons to informational materials and technology and thus to participate in their, or their children's, education.

## II.     JURISDICTION AND VENUE

3.     This is an action for declaratory and injunctive relief, and damages, brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

4.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because Defendant does business in this district, the acts constituting violations of the ADA and Section 504 occurred in this district, and Ms. Nightingale resides in this district.

## III.     THE PARTIES

5.     Plaintiff Noel Nightingale is mother to three children: L.P. is fourteen and in the ninth grade, C.P. is eleven and in the sixth grade, and D.P. is nine and in the fourth grade.  All three children attend schools within the SPS system.  Her children have attended schools within the SPS system since 2005.  For the 2014-2015 school year, D.P. attends John Muir Elementary School, C.P. attends Washington Middle School, and L.P. attends Garfield High School. However, during the time period referred to in this complaint, D.P. and C.P. attended John Muir Elementary School, and L.P. attended Washington Middle School.

6.     Ms. Nightingale is blind.  Her primary method of accessing digital information is to use software that expresses digital text as synthesized speech.  To do so, she uses a common screen access software known as Job Access with Speech ("JAWS").  This software also enables Ms. Nightingale to use keyboard commands to easily navigate text, to change the speed of

AMENDED COMPLAINT - 2

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2  speech to enhance her comprehension, and to receive audible cues concerning paragraphing,

3  punctuation, and other organizational information.  In short, JAWS allows Ms. Nightingale to

4  access textual digital content with the same independence and cognitive features available to

   sighted individuals through visual reading.

5          7.      The National Federation of the Blind, the oldest and largest national organization

6  of blind persons, is a 501(c)(3) non-profit corporation duly organized under the laws of the

7  District of Columbia and headquartered in Baltimore, Maryland.  It has affiliates in all 50 states,

8  Washington, D.C., and Puerto Rico.  The NFB and its affiliates are widely recognized by the

9  public, Congress, executive agencies of state and federal governments, and the courts as a

10 collective and representative voice on behalf of blind Americans and their families. The

11 organization promotes the general welfare of the blind by assisting the blind in their efforts to

12 integrate themselves into society on terms of equality and by removing barriers that result in the

13 denial of opportunity to blind persons in virtually every sphere of life, including education,

14 employment, family and community life, transportation, and recreation.  Its membership includes

15 blind parents of children enrolled in Seattle public schools and parents of blind children enrolled

16 in Seattle public schools.

17         8.      The ultimate purpose of the National Federation of the Blind is the complete

18 integration of the blind into society on a basis of equality.  This objective includes the removal of

19 legal, economic, and social discrimination.  As part of its mission and to achieve these goals, the

20 NFB actively pursues litigation to ensure that the blind receive equal access to the opportunities,

21 facilities, services, programs, and activities offered by school systems, educational agencies, and

22 institutions of higher education.

23         9.      Ms. Nightingale is a member of the NFB.

24         10.     Defendant SPS is the local educational agency and therefore is a public entity

25 under Title II of the ADA, 42 U.S.C. § 12131, *et. seq.*

26

27

AMENDED COMPLAINT - 3

10824.01 hh200904

11.     SPS is the largest K-12 school system in Washington state, serving more than 49,870 students in 95 schools.

12.     As a public school district, SPS receives federal financial assistance, which accounts for ten percent of its resources and funds programs such as Title I and Head Start. Consequently, SPS is required to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## IV.     STATEMENT OF FACTS

### Use of the Internet and Technology by the Blind

13.     For sighted and blind persons, the Internet is a significant source of information and education, a place for everyday activities such as shopping and research, and a means for keeping informed.  The Internet offers a wealth of information, services, and products with instant availability and without the need to travel to obtain this information.

14.     In the educational context, schools and school districts use the Internet to keep parents and the public informed of their activities and happenings, as well as to provide general information about their curriculum, programs, and activities.  Many school districts maintain a website for these purposes.

15.     School districts also often use various computer software programs within the classroom as part of their curriculum.  The students use these programs to learn lessons and master concepts in subjects such as math and reading.

16.     The blind access the Internet and computer software programs from personal computers by using keyboards in conjunction with screen access software, or screen readers, which vocalizes visual information on a computer screen or displays the content on a refreshable Braille display.  Such screen readers provide the only method by which all blind persons can independently access computerized digital information.  Unless Internet applications and software programs are designed to allow for use with screen readers, blind persons are unable to meaningfully access all the information, programs, and services they offer.

AMENDED COMPLAINT - 4

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

17.     Several screen readers are available to blind users of Windows and Apple operating system-enabled computers.  The most popular screen reader is Job Access With Speech, or JAWS.  For Apple users, the predominant screen reader is VoiceOver.  While each screen reader may have differences in how the user operates the software, each requires that the information available to sighted persons be capable of being rendered into text.

18.     When digital textual content is properly formatted, it is universally available to the sighted and blind alike and does not require the re-creation of text in a separate format. Unlike printed content, digital content is not inherently visual (or audible or tactile), and so must be converted to be accessible to any or all of those senses.  Thus, for example, this Complaint is in a PDF format that without modification can be read both by those with sight using their eyes and by blind persons using screen readers.

19.     Recognized standards exist for the preparation and presentation of universally designed mainstream digital content.  For example, the World Wide Web Consortium has promulgated Web Content Accessibility Guidelines 2.0, Success Criteria AA (hereinafter, "WCAG 2.0 AA").  Accessible math content is best presented in MathML.  Free open-source software has been written to make it easy to convert equations from the language in which they are typically written (LaTex) into MathML.  When source files are not available, equations can be pasted into Microsoft Word and then, with the aid of an inexpensive (approximately $30) plug-in, exported from Word into MathML.

### SPS Website

20.     SPS maintains its website at www.seattleschools.org (the Website).  The Website provides a wide range of information on topics important to students and their parents such as news and announcements, events, budget, transportation, school meals, school reports and district scorecards, and more, as well as access to student grades and assignments.

21.     The Website makes it possible for parents to efficiently and conveniently obtain information about the happenings of SPS and perform tasks relating to their children's education.

AMENDED COMPLAINT - 5

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

For example, the Website provides access to forms to enroll a child in school, change a child's address, or apply for a school choice.  As such, the Website provides unique benefits and services.

22.    Because the Website is not designed and programmed to be accessed nonvisually using screen readers, blind students and parents attempting to use the Website, including Ms. Nightingale, are unable to independently navigate and access all of the same information, enjoy all of the same benefits and services, and engage in all of the functions available to sighted students and parents.  Vision is required to successfully use the SPS Website.

23.    The Website contains barriers that prevent full and equal use by blind persons, including Ms. Nightingale, who use keyboards together with screen access software.  These barriers are pervasive and include: the lack of alt-tags or text on graphics, unlabeled or mislabeled buttons, unlabeled or mislabeled headings, unlabeled or mislabeled fields, unlabeled or mislabeled text boxes and areas, unlabeled or mislabeled lists, links that cannot be activated, and other information, controls, and elements that are not detectable by screen access software. These barriers violate WCAG 2.0 AA.

24.    For example, the links across the top of the Website for "Schools", "Students", "Family and Communities", and "District" can only be activated by clicking the link where it visually appears with a mouse, an option not available to a blind computer user, rather than also being susceptible to being activated with a keyboard command. As these lists appear to be the primary way to access the majority of content on the Website, these are especially egregious accessibility barriers.

25.    From 2005 to 2012, Ms. Nightingale accessed the Website without significant difficulty.

26.    Beginning in July 2012, however, Ms. Nightingale was unable to access the information she sought because the Website presented new significant access barriers.

AMENDED COMPLAINT - 6

27.     In July 2012, Ms. Nightingale emailed the Webmaster and explained that she was no longer able to access the Website with her screen reader.  In November 2012, the Webmaster informed her that SPS could not remedy the accessibility issues on its own, but was working with the vendor to correct the situation and achieve ADA compliance.

28.     SPS did not correct the situation, so Ms. Nightingale contacted SPS again, repeatedly requesting that it remedy the deficiencies in the Website.  But despite Ms. Nightingale's persistent and regular inquiry and requests regarding the state of the Website, SPS's Website remains inaccessible. A report of user and automated testing of barriers on the Website, begun July 31, 2014, describes barriers that prevent Ms. Nightingale from accessing, with substantially equivalent ease of use, all of the same information and engaging in all of the same transactions on the Website as are available to sighted users and is attached hereto as Exhibit A and incorporated into the Complaint as if alleged herein.

29.     Common technology and methods exist for SPS to make the Website accessible to the blind.  Various school districts, both larger and smaller than SPS, have used such technology and methods to make their websites accessible to the blind.

30.     The Website thus contains barriers that deny full and equal access to blind parents, including NFB members such as Ms. Nightingale, who would otherwise use the Website to be a fully engaged and active parent and to blind students who would otherwise use the Website to enjoy equal access to SPS's programs and activities.

**ST Math**

31.     In the 2013-2014 school year, SPS required that Ms. Nightingale's son, C.P., and his classmates use a software program, ST Math, to complete math assignments.  The students used ST Math both in class and at home.

32.     Midway through the school year, C.P.'s teacher contacted Ms. Nightingale and told her that C.P. had fallen behind on his assignments in ST Math.  The teacher informed Ms. Nightingale that ST Math featured a graph showing how much work the student had completed,

AMENDED COMPLAINT - 7

and that the graph showed that C.P. had completed less than half of the work expected of him and done by most of his classmates.

33.     Ms. Nightingale attempted to log into ST Math, but was unable to do so because ST Math was not designed to be compatible with screen reading software and is completely inaccessible to the blind, including Ms. Nightingale.  Even when C.P. logged into the software, Ms. Nightingale was unable to view his assignments or the graph tracking his progress.

34.     ST Math contains barriers that prevent full and equal use by Ms. Nightingale and other blind persons who use keyboards and screen readers.  These barriers are pervasive and include: the lack of keyboard access, inaccessible text content, lack of alt-tags or text on graphics, unlabeled buttons, and other information, controls, and elements that are not detectable by screen access software.

35.     SPS's acquisition and use of ST Math demonstrates a flaw in SPS's procurement process and thus a foreseeable risk that, in the absence of injunctive relief, SPS will acquire additional inaccessible software.

36.     It was and is entirely feasible, and affordable, for school districts to license educational software that conveys math digitally in an accessible format such as MathML, thus making math available to sighted and blind parents and students alike.

37.     Consequently, Ms. Nightingale was completely unable to monitor C.P.'s progress or assist him with his homework and has suffered damages as a result.

**COUNT I**
**Violations of Title II of the Americans with Disabilities Act**
**U.S.C. § 12131 et seq.**

38.     Plaintiffs incorporate the allegations the preceding paragraphs, as if alleged herein.

39.     The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, guarantees equal access for qualified individuals to the benefits of the services, programs, or activities of a public entity.  42 U.S.C. § 12132 *et seq.*

AMENDED COMPLAINT - 8

40.     Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

41.     Furthermore, a "public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others."  28 C.F.R. § 35.160(a)(1).  A "'companion' means a family member, friend, or associate of an individual seeking access to a service, program, or activity of a public entity, who, along with such individual, is an appropriate person with whom the public entity should communicate."  *Id* § 35.160(a)(2).

42.     Such public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."  *Id.* § 35.160(b)(1).

43.     SPS is the local educational agency and thus is a public entity under Title II of the ADA.

44.     The SPS Website and curriculum are services, programs or activities provided by SPS.

45.     Ms. Nightingale is an individual and companion with a disability: as a family member of her three children enrolled in SPS schools, she is an appropriate person with whom SPS should communicate.  Such communication with Ms. Nightingale is necessary to serve the interests of her children, who are participating in SPS's services, programs, and activities.

46.     SPS has failed and is failing to meet its obligations to communicate effectively with blind parents, including Ms. Nightingale, as well as to blind SPS students. Consequently, SPS is denying NFB members, including Ms. Nightingale, the opportunity to participate in their children's education—an opportunity provided to parents without disabilities—and to blind

AMENDED COMPLAINT - 9

students whose parents are NFB members, an equal opportunity for those students to enjoy the benefits of SPS's program and activities.  Because this denial prevents both the children of blind parents and blind children from fully participating in SPS's services, programs, or activities, SPS must assure effective communication with Ms. Nightingale and other disabled parents, as well as with blind children enrolled in SPS.

47.     SPS's actions constitute discrimination on the basis of a disability in violation of the ADA, in that SPS: (1) has failed to maintain policies and procedures to ensure compliance with Title II, specifically policies that provide equal access and effective communication to individuals and companions with disabilities; (2) has failed to ensure that communications with NFB members, including Ms. Nightingale, were as effective as communications with non-disabled companions, including other parents; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide reasonable modifications of policies, practices, and procedures; (5) has purchased and deployed new equipment and software that is inaccessible to NFB members, including Ms. Nightingale, after the effective date of the ADA; and (6) has failed to provide educational information in a manner that is timely, equally effective and equally integrated.

48.     As a result of SPS's actions, NFB members, including Ms. Nightingale, have suffered and continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to SPS's programs and activities, as well as the inability to obtain information about and assist their children, who are participating in SPS's services, programs and activities.

49.     NFB members, including Ms. Nightingale, have been and continue to be denied full access to the information intended to be communicated to parents of children enrolled in SPS schools and to blind children enrolled in SPS schools.

50.     The actions by SPS also were done intentionally or with deliberate indifference to the protected rights of Ms. Nightingale, thus entitling her to damages.

AMENDED COMPLAINT - 10

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

1

2

**COUNT II**
**Violations of § 504 of the Rehabilitation Act of 1973**
**29 U.S.C. § 794 *et seq.***

3      51.      Plaintiffs incorporate by reference all allegations contained in the preceding

4   paragraphs, as if alleged herein.

5      52.      Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified

6   individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

7   the participation in, be denied the benefits of, or be subjected to discrimination under any

8   program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

9      53.      Section 504 defines "program or activity," in pertinent part, as "all of the

10   operations of a department, agency, special purpose district, or other instrumentality of a State or

11   of a local government; or the entity of such State or local government that distributes such

12   assistance and each such department or agency (and each other State or local government entity)

13   to which the assistance is extended, in the case of assistance to a State or local government . . . ."

14   *Id.* § 794(b)(1).

15      54.      Such federally funded programs and activities must provide aids and services that

16   "afford handicapped persons equal opportunity to obtain the same result, to gain the same

17   benefit, or to reach the same level of achievement, in the most integrated setting appropriate to

18   the person's needs."  34 C.F.R. § 104.4(b)(2).

19      55.      SPS receives federal financial assistance, thereby subjecting itself to the

20   requirements of Section 504.

21      56.      Ms. Nightingale is blind and a parent of students at SPS institutions.  She is

22   therefore a qualified individual with a disability under Section 504.

23      57.      SPS has, solely by reason of her disability, excluded Ms. Nightingale and other

24   NFB members from participation in, denied them the benefits of, and otherwise discriminated

25   against them in its facilities, services, programs or activities.  SPS's violation of Section 504 and

26   its regulations has denied and continues to deny NFB members, including Ms. Nightingale, an

27   equal opportunity to access the educational information SPS offers to non-disabled parents.

AMENDED COMPLAINT - 11

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

58.     SPS's actions constitute discrimination on the basis of a disability in violation of the Section, in that SPS: (1) has failed to maintain policies and procedures to ensure compliance with Section 504, specifically policies that provide equal access and effective communication to individuals with disabilities; (2) has failed to ensure that communications with NFB members, including Ms. Nightingale, were as effective as communications with non-disabled parents and students; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide reasonable modifications of policies, practices, and procedures; (5) has purchased and deployed new equipment and software that is inaccessible to NFB members, including Ms. Nightingale, after the effective date of Section 504; (6) has failed to provide educational information in a manner that is timely, equally effective and equally integrated; and (7) has otherwise discriminated against NFB members, including Ms. Nightingale.

59.     As a result of SPS's actions, NFB members, including Ms. Nightingale, have suffered irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to SPS's programs and activities, as well as the inability of blind students to obtain information and of blind parents to obtain information about and assist their children, who are participating in SPS's services, programs and activities.

60.     The actions by SPS also were done intentionally or with deliberate indifference to the protected rights of Ms. Nightingale, and thus entitle her to damages.

**CLAIMS FOR RELIEF**

61.     WHEREFORE, Plaintiffs Ms. Nightingale and the NFB request judgment against the Defendant as follows:

(a)     A preliminary and permanent injunction prohibiting Defendant from violating Title II of the ADA and the Rehabilitation Act;

AMENDED COMPLAINT - 12

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

1

    (b)    A declaration that Defendants have and continue to violate Title II of the

2

    ADA and the Rehabilitation Act;

3

    (c)    An order directing SPS to adopt procurement processes that will prevent

4

    the acquisition of inaccessible software;

5

6

    (d)    An award to Plaintiffs of reasonable attorneys' fees and costs; and

7

    (e)    The right to conform the pleadings to the evidence presented at trial; and

8

    (f)    An award of such other and further relief as the Court may deem just.

9

10

    62.    In addition to the above, Plaintiff Ms. Nightingale demands judgment against the

Defendants as follows:

11

12

    (a)    An award of Ms. Nightingale's compensatory damages.

13

DATED this 2^nd^ day of December, 2014.

14

                       MacDONALD HOAGUE & BAYLESS

15

16

                  By:  */s/Jesse Wing*

17

                      Jesse Wing, WSBA # 27751
                      JesseW@MHB.com

18

                      1500 Hoge Building
                      705 Second Avenue

19

                      Seattle, WA  98104
                      Phone:  (206) 622-1604

20

21

                      Attorneys for Plaintiffs

22

23

24

25

26

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904

1    DATED this 2nd day of December, 2014.

2                                    MacDONALD HOAGUE & BAYLESS

3

4                                    By: */s/Joe Shaeffer*
                                         Joe Shaeffer, WSBA # 33273
5                                        JosephS@MHB.com
                                         1500 Hoge Building
6                                        705 Second Avenue
                                         Seattle, WA  98104
7                                        Phone:  (206) 622-1604

8
                                         Attorneys for Plaintiffs
9

10   DATED this 2nd day of December, 2014.

11                                   BROWN, GOLDSTEIN & LEVY LLP

12

13                                   By: */s/Daniel F. Goldstein*
                                         Daniel F. Goldstein *(pro hac vice)*
14                                       dfg@browngold.com
                                         120 E. Baltimore Street Suite 1700
15                                       Baltimore, Maryland 21202
                                         Phone: (410) 962-1030
16

17                                       Attorneys for Plaintiffs

18
     DATED this 2nd day of December, 2014.
19
                                     BROWN, GOLDSTEIN & LEVY LLP
20

21

22                                   By: */s/Emily L. Levenson*
                                         Emily L. Levenson *(pro hac vice)*
23                                       elevenson@browngold.com
                                         120 E. Baltimore Street Suite 1700
24                                       Baltimore, Maryland 21202
                                         Phone: (410) 962-1030
25
                                         Attorneys for Plaintiffs
26

27

AMENDED COMPLAINT - 14

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10824.01 hh200904