THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOEL NIGHTINGALE; and THE NATIONAL FEDERATION OF THE BLIND, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, d/b/a Seattle Public Schools,<br><br>Defendant.<br>_____<br>SEATTLE SCHOOL DISTRICT NO. 1 d/b/a Seattle Public Schools,<br><br>Third-Party Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>EDLINE, LLC, a Delaware limited liability company,<br><br>Third-Party Defendant and Counterclaim Plaintiff. | Case No. 2:14-cv-1286-RAJ<br><br>ORDER FOR PARTIAL EXTENSION OF CONSENT DECREE |

**ORDER FOR PARTIAL EXTENSION OF CONSENT DECREE**

1. On October 6, 2015, Plaintiffs, Noel Nightingale and the National Federation of the Blind ("NFB") and Defendant Seattle Public Schools ("SPS") entered into a Consent Decree to resolve the allegations in the above-referenced matter. That same day, this Honorable Court approved the Consent Decree.

2. Pursuant to Paragraphs 34 through 36 of the October 6, 2015 Consent Decree, SPS conducted a district-wide accessibility audit of its curricular and supplemental Electronic and Information Technology used by SPS students, and in response, developed an Accessibility Audit Corrective Action Plan (CAP). Pursuant to the CAP and a stipulated extension, SPS was to stop using inaccessible student software by January 30, 2019.

3. Pursuant to Paragraph 37, SPS notified Plaintiffs on January 18, 2019 that it intended to continue to use one noncompliant software program, PebbleGo, because discontinuing the program would require a fundamental alteration to SPS's elementary library program. SPS submitted an Equally Effective Alternate Access Plan (EEAAP) outlining SPS's plan for ensuring that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by SPS.

4. PebbleGo has represented to SPS and on its public website that it will be compliant and fully accessible by August 2019.

5. Rather than proceed with additional deliberations and litigation regarding whether the discontinuation of PebbleGo would result in a fundamental alteration pursuant to Paragraph 37, the Plaintiffs and SPS agree that it is in their mutual interests to extend the time period set forth in the Consent Decree with respect to Paragraph 36 as it relates to PebbleGo.

6. The parties stipulate and agree that SPS is otherwise in compliance with the Consent Decree.

7. Accordingly, the parties agree to entry of this Order, and have jointly requested the approval of the Court, without trial or further adjudication of any issues of fact or law raised in the Plaintiffs' Complaint.

In full and final resolution of this action, the Parties hereby **AGREE** and the Court expressly **APPROVES, ENTERS, AND ORDERS** the following:

8. The October 6, 2015 Consent Decree shall continue until its expiration date of April 6, 2019. Nothing in this Order shall be construed to modify or terminate any provision of the Consent Decree prior to April 6, 2019. However, as provided below, this Order shall extend certain provisions of the Consent Decree to continue until October 6, 2019.

9. The Parties agree that the only item remaining on the CAP that has not been resolved is SPS's ongoing use of PebbleGo.

10. The Parties agree that the Consent Decree will be extended to continue until October 6, 2019 to permit SPS to resolve the findings of the accessibility audit as they pertain to PebbleGo, specifically to confirm that PebbleGo is compliant and fully accessible.

11. By August 15, 2019, the Accessibility Coordinator or a designee will submit a report to the Plaintiffs as to whether PebbleGo is compliant and fully accessible.

12. If SPS chooses to assert a defense of fundamental alteration regarding PebbleGo, such assertion may be made only by the Superintendent of SPS or by an individual designated by the Superintendent after considering all resources available for use in the funding and operation of the service, program, or activity. The assertion must be accompanied by a written statement of the reasons for reaching that conclusion, including the cost of meeting the requirement and the available funding and other resources. If such a determination is made, SPS will take, and will specify in the written statement, any other action that would not result in such an alteration but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by SPS by providing equally effective alternate access as defined below and shall promptly provide NFB with a copy of the written statement.

13. "Fundamental Alteration" means a change to SPS's service, program, or activity that alters the nature of the service, program, or activity. Where SPS can document that providing accessibility would require a fundamental alteration, SPS will take any other action

that would not result in such an alteration but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by SPS.

14. "Equally effective alternate access" with respect to electronic and information technology means an alternative format or medium that communicates the same information as accurately and in as timely a fashion as does the original format or medium and that is appropriate to the disability of an individual. To provide equally effective alternate access, aids, benefits, and services are not required to produce the identical result or level of achievement for persons with and without disabilities, but must afford persons with disabilities equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs. SPS is not required to take an action that results in a fundamental alteration or undue financial and administrative burden, but must nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity.

15. If the Plaintiffs believe that this Order or any portion of it has been violated, they will give notice (including reasonable particulars) of the violations to SPS. SPS must respond to this notice as soon as practicable but no later than ten (10) days thereafter. SPS's response will include a confirmation or denial of the issue and a plan to resolve the issue, if applicable. The Parties will negotiate in good faith in an attempt to resolve any dispute. If the Parties are unable to reach a mutually acceptable resolution within ten (10) days of SPS's response, the Plaintiffs may seek court enforcement of this Order and the Consent Decree as it pertains to PebbleGo. If Plaintiffs seek court enforcement of this Order, then the partial extension of the Consent Decree continues in effect until such time as the parties resolve the dispute or the Court issues a Decision on the matter.

16. The Consent Decree constitutes a full and final resolution of all of Plaintiffs' claims against SPS in this action. This Order hereby extends the Consent Decree on the limited terms provided within this Order—that is, only for the ongoing resolution of the findings of the accessibility audit as it pertains to PebbleGo—until midnight on October 6, 2019 or as otherwise

extended pursuant to paragraph 15 above, during which time the Court retains jurisdiction over this matter on this limited basis. All other provisions of the Consent Decree will expire at midnight on April 6, 2019, unless further action is taken by the Court.

17. No other provisions of the Consent Decree are affected by this Order.

18. The signatories represent that they have the authority to bind the respective parties identified below to the terms of this Decree.

SO ORDERED this 19th day of March, 2019.

Richard A Jones

The Honorable Richard A. Jones
United States District Judge